The document below is hereby signed.

Signed: January 27, 2020



_____
S. Martin Teel, Jr.
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| ANDRENA D. CROCKETT, | ) | Case No. 19-00101 |
| | ) | (Chapter 13) |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| ANDRENA D. CROCKETT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. |
| | ) | 19-10030 |
| NATIONSTAR MORTGAGE, LLC, | ) | |
| dba MR. COOPER, | ) | **Not for Publication in** |
| | ) | **West's Bankruptcy Reporter** |
| Defendant. | ) | |

<u>MEMORANDUM DECISION AND ORDER RE MOTION TO DISMISS</u>

In a civil action commenced in 2015 in the Superior Court of
the District of Columbia, Case No. 2015 CA 003640 R (RP),
Nationstar Mortgage, LLC was granted permission in October 2017
to proceed with a foreclosure sale of the home of Andrena D.
Crockett, the debtor in the above-indicated bankruptcy case, Case
No. 19-00101, in this court.  The civil action is still pending
because of a pending appeal pursued by Crockett and because any
foreclosure sale would have to be ratified by the Superior Court.

In addition, under 11 U.S.C. § 362(a), the bankruptcy case stays any foreclosure sale.  Crockett's Complaint in this adversary proceeding asserts various claims against Nationstar for monetary damages and injunctive relief, with some of those claims relating to Nationstar's conduct in the civil action.

As held in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), to avoid dismissal under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  For the most part, the Complaint's allegations, even if accepted as true, do not establish a plausible claim for relief as a matter of law.  Moreover, the allegations are conclusory allegations that ought not be accepted as true, for a court is not required to accept as true legal conclusions "couched" as factual allegations, and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to state a claim upon which relief can be granted.  *Iqbal*, 556 U.S. 678, citing *Twombly*, 550 U.S. at 555.  Accordingly, I will dismiss the Complaint.

I

## ALLEGED VIOLATIONS OF AUTOMATIC STAY

I first address Crockett's claim ("Claim I") that Nationstar violated the automatic stay.  The facts pertinent to that claim,

next discussed, also bear on Crockett's claims, discussed later, that Nationstar committed fraud by allegedly misleading the Superior Court as to who was the proper plaintiff in the Superior Court. The docket in the Superior Court reflects some confusion as to who was the plaintiff at various times in the foreclosure action, and Crockett relies on that confusion in asserting that Nationstar violated the automatic stay and committed fraud.

A.

Facts

The docket in the Superior Court and the dockets for the two bankruptcy cases establish these facts.[1]  Nationstar commenced the civil action on May 19, 2015. On September 22, 2017, the Superior Court substituted MTGLQ Investors, L.P. as the plaintiff. On October 25, 2017, the Superior Court issued an *Order* that, despite MTGLQ having been substituted as the plaintiff, listed Nationstar as the party. The *Order* upheld Nationstar's claims as the plaintiff, granted Nationstar's motion for summary judgment, and dismissed all remaining counterclaims asserted by Crockett. On October 25, 2017, the Superior Court also entered an *Order and Decree of Sale*, again listing

---

[1]  In deciding a Rule 12(b)(6) motion, a court may take into account the record of another proceeding that, as here, is subject to judicial notice. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *E.E.O.C. v. St. Francis Xavier Parochial Sch.*, 117 F.3d 621, 624 (D.C. Cir. 1997); *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1228 (D.C. Cir. 1993).

Nationstar as the plaintiff, and authorizing Nationstar to proceed with a foreclosure sale on the terms specified in the *Order and Decree of Sale*, which specified that the sale was subject to ratification by the Superior Court.  The Superior Court set status hearings from time to time.

On March 19, 2018, MTGLQ filed a motion to substitute Nationstar as the plaintiff.  The docket sheet includes this entry dated April 20, 2018:

> The following event: Status Hearing scheduled for 04/20/2018 at 10:00 am has been resulted as follows:

> Result: Status Hearing Held. . . .  Plaintiff's Motion to Substitute Party Plaintiff GRANTED by Judge Rankin in open court. . . .

The Superior Court did not file a written order granting that motion, but all of the Superior Court's subsequent orders have listed Nationstar as the plaintiff.

The debtor filed a notice of appeal to the District of Columbia Court of Appeals from the *Order* and the *Order and Decree of Sale* that were entered on October 25, 2017.  Nationstar did not proceed immediately to a foreclosure sale, and initially requested that status hearings be continued pending the outcome of the appeal.  On November 2, 2018, the Superior Court set a status hearing for May 10, 2019.  Towards the end of 2018, Nationstar decided to proceed with a foreclosure sale to be held on January 8, 2019.  On January 4, 2019, the debtor filed an emergency motion for a temporary restraining order to stop the

4

foreclosure sale.  The Superior Court denied that motion on
January 7, 2019, and on that date the debtor commenced Case No.
19-00019 in this Bankruptcy Court, thus giving rise to an
automatic stay under 11 U.S.C. § 362(a) staying the foreclosure
sale.

On January 10, 2019, even though the Superior Court had
orally ruled on April 20, 2018, that Nationstar would be
substituted as the plaintiff, MTGLQ (represented by the same
attorneys as those representing Nationstar) filed a *Suggestion of
Bankruptcy Filing* in the Superior Court listing itself in the
caption as the plaintiff and noting the bankruptcy case the
debtor filed on January 7, 2019 (Case No. 19-00019).  That
bankruptcy case was dismissed on February 8, 2019, followed by
the debtor's current bankruptcy case (Case No. 19-00101)
commenced on February 15, 2019.  That new bankruptcy case once
again gave rise to an automatic stay under 11 U.S.C. § 362(a),
and that automatic stay remains in place.  Failing to comply with
Local Bankruptcy Rule 2072-1, Crockett did not send notice of the
filing of her petition commencing Case No. 19-00101 to the Clerk
of the Superior Court and to the Clerk of the District of
Columbia Court of Appeals.  Apparently unaware that Crockett's
earlier bankruptcy case, Case No. 19-00019, had been dismissed,
the Superior Court continued until May 2019 to treat the civil
action as still stayed by the automatic stay in that earlier

bankruptcy case.[2]

On May 10, 2019, the Superior Court continued the status
hearing set for that date to May 31, 2019.  At the status hearing
of May 31, 2019, or beforehand, the Superior Court determined
that Case No. 19-00019 had been closed.  A docket entry of May
31, 2019, in the Superior Court action for the May 31, 2019
status hearing reflects this outcome: "Bankruptcy case was closed
as of 05/24/2019.  Bankruptcy stay is lifted.  Status Hearing
continued to 08/02/2019 at 10:00 AM."  Indeed, Case No. 19-00019
in this court had been closed on May 24, 2019.[3]  However, Case
No. 19-00101, in which the automatic stay of 11 U.S.C. § 362(a)
remained in place, was still pending, but the debtor had not
notified the Superior Court of the pendency of the later
bankruptcy case, Case No. 19-00101.

An attorney for Nationstar appeared at the status hearing on
May 31, 2019, and entered his appearance on behalf of Nationstar
on that date.  There is nothing in the debtor's Complaint to
suggest that this new attorney necessarily would have been aware
that the debtor had filed Case No. 19-00101 in the Bankruptcy

_____

[2]  Under 11 U.S.C. § 349(b)(3), the dismissal of Case No.
19-00019 revested the property of the estate in the debtor, and
under 11 U.S.C. § 362(c)(1) and (2)(B) the dismissal terminated
the automatic stay in Case No. 19-00019.

[3]  Closing a case under 11 U.S.C. § 350 is different from
dismissing a case.  The closing of Case No. 19-00019 occurred
when the Chapter 13 trustee in the case filed a report certifying
that the estate had been fully administered.

Court.  The debtor nevertheless asserts that at the status
hearing of May 31, 2019, this new attorney was aware of Case No.
19-00101 but failed to inform the Superior Court judge that the
debtor had an active bankruptcy case pending, and that this
"allowed the Judge to believe that Plaintiff had no active
bankruptcy."  However, other than the Superior Court's setting a
further status hearing (which has not been held), nothing
happened in the civil action as a result of the status hearing of
May 31, 2019.

On July 9, 2019, MTGLQ (represented by the same attorneys as
Nationstar and even though the Superior Court had orally ruled on
April 20, 2018, that Nationstar would be substituted as the
plaintiff), filed a motion to continue the status hearing set for
August 2, 2019, based on the pendency of Case No. 19-00101 in the
Bankruptcy Court.  On July 30, 2019, the Superior Court canceled
the August 2, 2019 status hearing.

B.

Analysis

In the Complaint's Claim I the debtor contends that
Nationstar violated the automatic stay when its attorney at the
status hearing of May 31, 2019, failed to inform the Superior
Court judge that the debtor had an active bankruptcy case
pending, and thus "allowed the Judge to believe that Plaintiff
had no active bankruptcy."

Although 11 U.S.C. § 362(a)(1) stays any act to continue a civil action (meaning continuing to litigate the civil action), Nationstar did not act to continue litigating the civil action, as is evident from its attorneys' filings of January 9, 2019, and July 9, 2019 (filings for which the caption listed MTGLQ as the plaintff). The Superior Court needed to be kept apprised whether the automatic stay was in place and set status hearings for that apparent purpose during the time it understood that Case No. 19-00019 was pending and during the pendency of Case No. 19-00101 once it learned of that case. The status hearings have only served informational purposes, and do not entail a resumption of the litigation in the Superior Court. In any event, it was not Nationstar that requested the setting of a status hearing. There has been no act by Nationstar to resume litigating the civil action and thus no violation of the automatic stay. Nor has the debtor pointed to any damage arising from the Superior Court's setting further status hearings.

The debtor also complains that the Superior Court's erroneously acting as if there were no automatic stay in place resulted in the District of Columbia Court of Appeals issuing a decision in the debtor's pending appeal. However, Crockett had not notified the Court of Appeals as required by Local Bankruptcy Rule 2072-1 that Case No. 19-00101 had been commenced in the Bankruptcy Court. Crockett's allegations do not establish that

Nationstar acted to have the Court of Appeals issue its decision. Nor has the debtor pointed to any damage arising from the premature issuance of the decision on appeal: the Court of Appeals has withdrawn its mandate.

II

VARIOUS CLAIMS, INCLUDING ALLEGED
VIOLATIONS OF RESPA AND REGULATIONS UNDER RESPA

In Claim II, Crockett alleges various claims.  The Complaint's prayer for relief indicates that Crockett seeks:

> 2. Count II: Compensatory and Punitive damages for violation of 12 CFR § 1024.34, erroneous escrow accounting in Proof of Claim; 42-815.01 Right to cure residential mortgage, failure to allow to make payments; 12 CFR § 1024.35 failure to correct accounting in Proof of Calm [sic].

Crockett alleges first that there were various inaccuracies or unexplained items in Nationstar's proof of claim.  *See* Compl. ¶¶ 30, 33-37, and 40.  The court has upheld Nationstar's proof of claim in its entirety, and that ruling is binding on the debtor, unless and until that ruling is vacated.  (Crockett has taken an appeal of that ruling.)

In addition to errors specifically identified as being included in Nationstar's proof of claim, Crockett identifies other alleged errors in Nationstar's accounting.[4]  To the extent

---

[4]  *See* Compl. ¶¶ 8 and 12 (overpayment of real property taxes); ¶ 32 (discrepancies acknowledged by Nationstar); ¶ 38 (application of payments for escrow for taxes and insurance); and ¶ 39 (unexplained $6,000 overage for the period of February 15, 2019 filing to September 2019).

those alleged errors are contained in the proof of claim, the
overruling of Crockett's objection to Nationstar's proof of claim
is binding on Crockett.  To the extent that these alleged errors
were not included in Nationstar's proof of claim, Crockett has
described these errors in only conclusory terms.  Moreover, she
has not identified a basis under the law for imposing monetary
damages against Nationstar even if such errors occurred: showing
that a mortgagee issued an erroneous accounting statement does
not alone suffice to establish a basis for recovering monetary
damages.

Crockett also alleges that Nationstar has not allowed her to
make payments or to modify the loan.  Compl. ¶ 31.  However,
Crockett has not alleged facts establishing that Nationstar was
obligated to accept payments or to modify the loan.

Crockett also alleges that in addressing her mortgage,
Nationstar violated 12 U.S.C. § 2605 (codifying part 6 of the
Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C.
§§ 2601-2617) and various regulations issued under RESPA.
Specifically, the Complaint alleges:

> 41.  Plaintiff is entitled to relief pursuant to
> under 12 U.S.C. § 2605(e) for failure to respond to
> borrower inquiries; 12 CFR § 1024.34 for failure to
> provide accurate escrow accounting; 12 CFR § 1024.38, 12
> CFR § 1024.35 and [12 CFR] § 1024.32 for failure to
> disclose in a timely, provide clear and accurate
> accounting in a manner that is not confusing manner, and
> failure to correct when brought to their attention, thus
> the need for a third party audit.

Under Fed. R. Civ. P. 12(b)(6), the Complaint fails to state
sufficient facts to establish a claim upon which relief can be
granted pursuant to RESPA or its regulations.

A.

Alleged Violations of 12 U.S.C. § 2605(e)

Under 12 U.S.C. § 2605(e)(1)(A):

> If any servicer of a federally related mortgage loan
> receives a qualified written request from the borrower
> (or an agent of the borrower) **for information relating to
> the servicing of such loan**, the servicer shall provide a
> written response acknowledging receipt of the
> correspondence within 5 days (excluding legal public
> holidays, Saturdays, and Sundays) unless the action
> requested is taken within such period.

[Emphasis added.] In turn, § 2605(e)(2) gives the servicer a 30-
day window to react to the qualified written request.  Crockett
contends that Nationstar violated 12 U.S.C. § 2605(e) "for
failure to respond to borrower inquiries" (Compl. ¶ 41) and that
Nationstar "submitted documents outlining the amount due from the
time of the bankruptcy, February 15, 2019 filing to September
2019 amounted to an unexplained approximately $6,000 overage.
And when asked to provide a line item accounting of the amounts
due did not respond to the QWR" (presumably meaning a qualified
written request).  (Compl. ¶ 39.)

Under 12 U.S.C. § 2605(i)(3):

> The term "servicing" means receiving any scheduled
> periodic payments from a borrower pursuant to the terms
> of any loan, including amounts for escrow accounts
> described in section 2609 of this title, and making the
> payments of principal and interest and such other

11

payments with respect to the amounts received from the borrower as may be required pursuant to the terms of the loan.

A request for "a line item accounting of the amounts due" can qualify as a request "for information relating to the servicing of such loan" such as to impose § 2605(e)(2) duties on a servicer to respond to what is otherwise a qualified written request. *See Ng v. US Bank*, N.A., No. 15-CV-04998-KAW, 2016 WL 5390296, at *5 (N.D. Cal. Sept. 26, 2016) (request for an accounting or payment history relates to servicing of the loan).

For a servicer to be required to respond within 30 days to a written request from a borrower (*i.e.*, for the request to be a **qualified** written request), the writing must be one that:

- "includes, or otherwise enables the servicer to identify, the name and account of the borrower" (12 U.S.C. § 1605(e)(2)(B)(i)); and

- "includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower" (12 U.S.C. § 2605(e)(2)(B)(ii)).

The Complaint fails to establish that the alleged QWR was in fact a qualified written request because the Complaint did not attach the QWR or provide various details establishing that the alleged

QWR was a qualified written request.  *See Fedewa v. J.P. Morgan Chase Bank, Nat. Ass'n*, 921 F. Supp. 2d 504, 510 (E.D. Va. 2013) ("The Complaint contains no details as to the substantive content of the request, when the requests were sent by Plaintiffs and received by Defendant, or whether the form of the requests comported with the requirements of RESPA."); *Bernstein v. Wells Fargo & Co.*, No. 118CV02887RWSCMS, 2018 WL 7018007, at *12 (N.D. Ga. Nov. 28, 2018), *rep. and rec. adopted sub nom. Bernstein v. Wells Fargo Bank, N.A.*, No. 1:18-CV-2887-RWS, 2019 WL 177206 (N.D. Ga. Jan. 3, 2019), *appeal dismissed sub nom. Bernstein v. Finley*, No. 19-10270-CC, 2019 WL 3406586 (11th Cir. Mar. 13, 2019); *Boston v. Ocwen Loan Servicing, LLC*, No. 3:12CV452, 2013 WL 122151, at *3 (W.D.N.C. Jan. 9, 2013) (dismissing plaintiff's RESPA claim in part because the plaintiff did not attach any documents evidencing her QWR or provide "any specific information about her alleged requests that would satisfy the statutory definition of a QWR").  The Complaint here fails to identify the date of the QWR; fails to disclose the address of the entity to whom it was sent (which might be pertinent by reason of 12 C.F.R. § 1024.35 if Nationstar had a designated address for § 2605(e)(2) notices); fails to allege facts establishing that the QWR adequately identified the account at issue; and does not disclose the exact contents of the QWR.

Even if the alleged QWR was a qualified written request, the

Complaint does not allege any damage proximately caused by the failure to respond to the alleged QWR.  Accordingly, the Complaint does not establish a right to recover damages based on Nationstar's failure to respond to the QWR.  Section 2605(f) provides that a servicer who "fails to comply with any provision of" § 2605 is subject to liability to the borrower under § 2605(f)(1)(A) for "any actual damages to the borrower **as a result of the failure**" and under § 2605(f)(1)(B) for "any additional damages, as the court may allow, **in the case of a pattern or practice of noncompliance with the requirements of [§ 2605]**, in an amount not to exceed $2,000."  (Emphasis added.)  As held in *See Renfroe v. Nationstar Mortg., LLC*, 822 F.3d 1241, 1246 (11th Cir. 2016), "damages are an essential element in pleading a RESPA claim" and to recover actual damages under § 2605(f)(1)(A) a "causal link" must exist "between the alleged violation and the damages."  *See also Toone v. Wells Fargo Bank, N.A.*, 716 F.3d 516, 523 (10th Cir. 2013) (upholding dismissal of § 2605(e) claim because the complaint did not allege damages resulting from delay in responding to the requests); *Hintz v. JPMorgan Chase Bank, N.A.*, 686 F.3d 505, 510–11 (8th Cir. 2012) (upholding dismissal of § 2605(e) claim because complaint did not identify actual damages arising from failure to respond to written requests); *In re Griffin*, No. 10-22431-RDD, 2010 WL 3928610, at *4 (Bankr. S.D.N.Y. Aug. 31, 2010) ("[S]imply saying

14

that, for example, the servicer's failure to respond to a QWR
caused damages without specifying how those damages were caused,"
is not enough to survive a Rule 12(b)(6) motion to dismiss).
Here, the debtor has not pled any damages for which there is a
causal link to the alleged failure to respond to the alleged
qualified written request.[5]  Nor has she pled "a pattern or
practice of noncompliance" with the requirements of § 2605 such
as to have a claim for statutory damages under § 2605(f)(1)(B).
*See Toone*, 716 F.3d at 523 (dismissal upheld based on failure to
allege any violations with respect to other borrowers).

B.

Alleged Violations of 12 C.F.R.
§§ 1024.32, 1024.35, and 1024.38

The Complaint alleges that Crockett "is entitled to relief
pursuant to . . . [12 C.F.R. §§ 1024.32, 1024.35, and 1024.38]
for failure to disclose in a timely, provide clear and accurate
accounting in a manner that is not confusing manner, and failure
to correct when brought to their attention, thus the need for a
third party audit."  However, Crockett has pled insufficient

---

[5]  With respect to any failure to respond to a request for
"a line item accounting of the amounts due," it is noteworthy
that in the bankruptcy case Nationstar did provide a line item
accounting of amounts due.  The proof of claim Nationstar filed
on April 5, 2019, disclosed in detail a *Loan Payment History From
First Date of Default* disclosing line by line each amount that
had come due on the loan as of the petition date and attaching an
*Annual Escrow Account Disclosure Statement* sent to the debtor
dated March 27, 2019, showing escrow payments due within the year
after the commencement of the bankruptcy case.

facts to demonstrate a failure to comply with those regulations.
I address first 12 C.F.R. § 1024.35 because that is the
regulation implementing the statutory provision, 12 U.S.C.
§ 2605, already addressed.

(1) 12 C.F.R. § 1024.35

Courts disagree about whether RESPA and 12 C.F.R. § 1024.35
create a private right of action for alleged violations of
section 1024.35.  *See Self v. Nationstar Mortg. LLC*, No.
2:19-CV-3-D, 2019 WL 4734412, at *10 (E.D.N.C. Sept. 26, 2019).
However, as relevant here, 12 C.F.R. § 1024.35 merely provides
regulations regarding responding to QWRs under 12 U.S.C. § 2605,
and Crockett's claim under 12 C.F.R. § 1024.35 must fail for the
same reason that the claim under § 2605 fails: the Complaint does
not allege any damage suffered as a result of failure to comply
with 12 U.S.C. § 2605 and with 12 C.F.R. § 1024.35 as the
regulation regarding required responses to a qualified written
request.

(2) 12 C.F.R. § 1024.32

The Complaint alleges that Nationstar failed to "provide
clear and accurate accounting in a manner that is not confusing
manner" in an apparent attempt to allege that Nationstar failed
to comply with 12 C.F.R. § 1024.32.  This regulation (titled
"General disclosure requirements") provides in relevant part:
"Except as otherwise provided in this subpart, disclosures

16

required under this subpart must be clear and conspicuous, in writing, and in a form that a recipient may keep."  12 C.F.R. § 1024.32(a)(1).  However, the Complaint fails to identify disclosures that Nationstar made that were required under the pertinent subpart (12 C.F.R. §§ 1024.30 through 1024.41). Moreover, the Complaint fails to identify the contents of any disclosures Nationstar made, and thus the Complaint does not set forth facts establishing that Nationstar's disclosures failed "to be clear and conspicuous, in writing, and in a form that [Crockett may keep]" such as to constitue a failure to comply with 12 C.F.R. § 1024.32(a)(1) (if the disclosures were required to comply with that provision).

(3) 12 C.F.R. § 1024.34

12 C.F.R. § 1024.34 is titled "Timely escrow payments and treatment of escrow account balances."  This regulation and the statutory provision it implements, 12 U.S.C. § 2605(g), deal first with the servicer's obligation to make timely disbursements to pay taxes, insurance premiums, and other charges for the mortgaged property, with 12 C.F.R. § 1024.34(a) clarifying that timeliness means making the payment in time to avoid any penalty. The Complaint does not allege that Nationstar failed to timely make such disbursements.  In addition, 12 C.F.R. § 1024.34(b) and 12 U.S.C. § 2605(g) deal with the requirement to refund an escrow balance upon payment of a mortgage loan in full.  The mortgage

loan held by Nationstar has not been paid in full.  Although the
Complaint alleges that there are errors in Nationstar's escrow
accounting, such errors are not addressed by 12 C.F.R. § 1024.34.
Such servicing errors in accounting are the subject of 12 U.S.C.
§ 2605(e) and 12 C.F.R. § 1024.35, provisions discussed above.[6]

### (4) 12 C.F.R. § 1024.38

The courts uniformly hold that 12 C.F.R. § 1024.38 does not
provide a private right of action.  *See Plouffe v. Bayview Loan
Servicing, LLC*, No. 15-5699, 2018 WL 2984874, at *20 (E.D. Pa.
June 13, 2018) ("The CFPB's interpretations of Regulation X
explicitly state that government regulators enforce section
1024.38, and that the provision does not provide a private right
of action.  Further, courts have consistently found that there is
no private right of action under section 1024.38."); *Lackie v.
PHH Mortg. Corp.*, No. 3:17-CV-377-BT, 2018 WL 4409799, at *2

---

[6] Section 10 of RESPA, 12 U.S.C. § 2609, sets forth various
requirements regarding escrow accounts, such as the proper
maximum amount of such an account, but unlike section 6 of RESPA,
12 U.S.C. § 2605, the provisions of § 2609 do not set forth an
entitlement to a private cause of action for violation of that
section.  Courts are in agreement that there is no private cause
of action available under 12 U.S.C. § 2609 and its implementing
regulation, 12 C.F.R. § 1024.17, previously 24 C.F.R. § 3500.17.
*See McCray v. Bank of Am., Corp.*, No. CV ELH-14-2446, 2017 WL
1315509, at *15 (D. Md. Apr. 10, 2017), citing *Au v. Republic
State Mortg. Co.*, 948 F. Supp. 2d 1086, 1101 (D. Haw. 2013);
*Hardy v. Regions Mortg., Inc.*, 449 F.3d 1357, 1358 (11th Cir.
2006); *State of La. v. Litton Mortg. Co.*, 50 F.3d 1298, 1304 (5th
Cir. 1995); *Allison v. Liberty Sav.*, 695 F.2d 1086, 1087 (7th
Cir. 1982).

(N.D. Tex. Sept. 17, 2018); *Covino v. Wells Fargo Bank*, No.
2:16-CV-02264, 2018 WL 4616071, at *5 (D.N.J. Sept. 26, 2018);
*Mastin v. Ditech Fin., LLC*, No. 3:17CV368, 2018 WL 524871, at *7
(E.D. Va. Jan. 23, 2018); *Wilson v. Deutsche Bank Tr. Co.
Americas as Tr. for Residential Accredit Loans, Inc., Mortg.
Asset-Backed Pass-Through Certificates, Series 2006-QS5*, No.
3:18-CV-0854-D, 2019 WL 5840325, at *13 (N.D. Tex. Nov. 7, 2019);
*Longmire v. Wells Fargo Bank, N.A.*, 2017 WL 4075187, at *3 (N.D.
Tex. Aug. 16, 2017), *rec. adopted*, 2017 WL 4022888 (N.D. Tex.
Sept. 13, 2017); *Joussett v. Bank of Am., N.A.*, No. 15-6318, 2016
WL 5848845, at *5 (E.D. Pa. Oct. 6, 2016) ("[T]here is no private
right of action to enforce § 1024.38.  The CFPB explicitly
crafted the regulation not to provide for private enforcement.").

## III

## ALLEGED DEFICIENT NOTICE OF FORECLOSURE

In Claim III, Crockett alleges that Nationstar did not give
10-day notice of its foreclosure sale as required by the *Order
and Decree of Sale*.  However, she alleges that notice of the
January 8, 2019 sale was given on December 26, 2019, which was 13
days before the scheduled sale.

She also characterizes the *Order and Decree of Sale* as
having been obtained fraudulently.  However, the Superior Court's
*Order and Decree of Sale* is binding on this court as a matter of
*res judicata* even though an appeal thereof is pending.

19

IV

ALLEGED FAILURE TO ACCEPT
PAYMENTS, LACK OF STANDING, AND SO FORTH

Claim IV of the Complaint raises several claims.  Crockett first contends that Nationstar refused to accept payments in violation of D.C. Code § 42-815, but she does not allege that she tendered a full cure of her default as required by that statute in order for Nationstar to be obligated to accept the payment.

She also complains that MTGQL continued to act as a plaintiff in the Superior Court when only Nationstar properly ought to have been the party acting as the plaintiff.  However, the Superior Court's *Order and Decree of Sale* gave Nationstar, not MTGQL, the right to foreclose, and the Complaint does not show how MTGQL's filing of papers caused any harm.

Finally, she alleges that "the Notice of Default was not accurate due to lack of standing in violation of DC law since it contained errors in amount stated in the notice."  That allegation does not establish a lack of standing.  Moreover, the Superior Court's *Order and Decree of Sale* establishes that Nationstar has standing to foreclose and is binding on this court.  The provisions she cites in the caption of Claim IV regarding lack of standing to foreclose, D.C. Code §§ 42-815, 42-802, and 42-801, do not address any issue of standing.

V

FRAUD AND OTHER CLAIMS

Crockett's Claim V alleges various fraud and other claims.
Most of the alleged misrepresentations characterized as fraud
were representations made to the Superior Court or to this court.
However, "the District of Columbia has long recognized an
absolute privilege for statements made preliminary to, or in the
course of, a judicial proceeding, so long as the statements bear
some relationship to the proceeding." *Finkelstein, Thompson &
Loughran v. Hemispherx Biopharma, Inc.*, 774 A.2d 332, 338 (D.C.
2001); *McNair Builders, Inc. v. Taylor*, 3 A.3d 1132, 1135 n.1
(D.C. 2010) (judicial proceedings privilege precludes claims of
fraud and misrepresentation).  In any event, for fraud to exist,
Crockett would have to show that she acted in reasonable reliance
on the misstatements.  *See Sundberg v. TTR Realty, LLC*, 109 A.3d
1123, 1130 (D.C. 2015).  Crockett alleges that the Superior Court
relied on the inaccurate information but she does not contend
that she undertook any act in reliance on the inaccurate
information.  To the extent that Crockett contends that the
rulings in the Superior Court regarding foreclosure and in this
court regarding Nationstar's proof of claim were procured by
fraud, that does not state a claim for damages: Crockett's remedy
is to file a motion seeking relief from such rulings, not to sue
for damages, and unless those rulings are vacated, they are

21

binding on Crockett as to the issues they adjudicated.

First, Crockett alleges:

> [I]n a Notice of Bankruptcy submitted to the District of
> Columbia Superior Court, [MTGQL] filed as the Plaintiff
> with the intent to deceive.   District of Columbia
> Recorder of Deeds show[s] Nationstar . . . as the owner
> of record on February 15, 2019, the date of the
> Bankruptcy filing.

She does not allege what MTGQL was attempting to deceive anyone
into believing.  MTGQL had already filed a motion on March 19,
2018, for Nationstar to be substituted as the plaintiff, so no
one could be misled as to who MTGQL believed should be treated as
the plaintiff.  There were two filings by MTGQL: first, MTGQL's
*Suggestion of Bankruptcy Filing* of January 10, 2019, which merely
informed the Superior Court that the debtor had filed Case No.
19-00019 in the Bankruptcy Court; and, second, MTGQL's motion of
July 9, 2019, to continue the scheduling conference set for
August 2019, which merely informed the Superior Court that Case
No. 19-00101 was pending in the Bankruptcy Court.  There was
nothing deceptive in the information contained in those filings.

Second, Crockett contends that there were inaccuracies in
Nationstar's proof of claim, but this court has upheld the
validity of that proof of claim by overruling the debtor's
objection thereto.

Third, Crockett contends that Nationstar included inaccurate
amounts in its complaint in the Superior Court, but the Superior
Court has disposed of that complaint, and its ruling is binding

on this court unless that ruling is vacated.

One other claim concerns any reliance by Nationstar on the Court of Appeals decision issued while the bankruptcy case was pending.  At the hearing on the objection to Nationstar's proof of claim, I overruled the debtor's objection to the claim in part on the basis that in its ruling of October 2017 the Superior Court had already dismissed counterclaims of the debtor that raised similar objections as to charges Nationstar had assessed and the accuracy of its accountings for its claim.  Crockett points to Nationstar's having provided this court, at the hearing on the motion for relief from the automatic stay, a copy of the Court of Appeals decision, a decision that the automatic stay in this case stayed being issued.  However, Crockett does not contest that the decision of the Court of Appeals accurately summarized the nature of the debtor's counterclaims in the Superior Court.  Any reliance on that summary was inconsequential and has caused the debtor no harm.

VI

UNJUST ENRICHMENT

Claim VI of the Complaint, titled Unjust Enrichment, complains once again that Nationstar provided the Superior Court and this court with inaccurate information, and claimed a higher rate of interest than was actually owed.  She claims this led to unjust enrichment.  A claim for unjust enrichment occurs when:

(1) the plaintiff conferred a benefit on the defendant; (2) the defendant retains the benefit; and (3) under the circumstances, the defendant's retention of the benefit is unjust." *News World Commc'ns, Inc. v. Thompsen*, 878 A.2d 1218, 1222 (D.C. 2005); *see also Pearline Peart v. D.C. Hous. Auth.*, 972 A.2d 810, 813 (D.C. 2009). Crockett has conferred no benefit on Nationstar that was not already conferred on Nationstar by the parties' contractual obligations. There has been no unjust enrichment.

## VII

## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Claim VII of the Complaint seeks damages for intentional infliction of emotional distress, and alleges that Nationstar caused her stress leading to health issues and financial ruin when it intentionally dragged the litigation out for almost 8 years; intentionally refused to make obvious corrections when brought to its attention; and intentionally violated local and federal laws without regard for the harm caused. These are all conclusory allegations that do not pass muster under Rule 12(b)(6). Moreover, to establish such a claim the plaintiff "must allege conduct that was so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Doe v. Bernabei & Wachtel, PLLC*, 116 A.3d 1262, 1269 (D.C. 2015) (citing *Williams v. District of*

24

*Columbia*, 9 A.3d 484, 494 (D.C. 2010)) (internal quotations omitted).  Courts in this jurisdiction have found that the crediting and accounting of mortgage payments and the initiation of foreclosure proceedings do not rise to the extreme or outrageous level necessary to support a claim for intentional infliction of emotional distress. *See Ihebereme v. Capital One, N.A.*, 730 F. Supp. 2d 40, 55 (D.D.C. 2012) (finding that plaintiff's allegations that defendant refused to accept mortgage payments, failed to timely credit mortgage payments, overcharged plaintiff, and discriminated against plaintiff were not atrocious or outrageous so as to give rise to a claim for intentional infliction of emotional distress); *Avila v. CitiMortgage, Inc.*, 45 F. Supp. 3d 110, 121 (D.D.C. 2014) (stating that "foreclosure proceedings, while undoubtedly unpleasant, are not uncommon and cannot because
of the process alone 'be regarded as atrocious [or] utterly intolerable in a civilized community'") (citation omitted).  The Superior Court and this court have both ruled that Nationstar has claims entitling it to seek foreclosure.  By pursuing its rights pursuant to those claims, Nationstar has not engaged in conduct that can be deemed outrageous in character.  Therefore, the claim for intentional infliction of emotional distress allegation is insufficient as a matter of law.

VIII

## DECLARATORY RELIEF RE INTEREST RATE

Claim VIII seeks declaratory relief regarding the loan's interest rate.  However, this court has already adjudicated the amount of interest owed by upholding Nationstar's proof of claim.

IX

## OTHER DECLARATORY RELIEF

Claim IX first seeks declaratory relief regarding who currently owns the note secured by the mortgage on Crockett's property.  However, the Superior Court has already adjudicated that Nationstar is entitled to proceed to foreclosure to collect the loan obligation.  That ruling necessarily determined that Nationstar owns the note.

Claim IX alleges "Plaintiff request that this Court instruct Nationstar to correct all accounting records, specifically, after stating they could not account for a discrepancy of $46,262.77 between January 2010-February 2010 after a third party audit, if necessary."  However, this court has already overruled the debtor's objection to Nationstar's claim, and the debtor is barred from seeking this relief by reason of the binding effect of that ruling.

X

## CLAIM OF ALLEGEDLY ERRONEOUS ACCOUNTING
## PROVIDED TO CREDIT REPORTING AGENCIES AND SIMILAR CLAIMS

In Claim X, the debtor raises claims arising from alleged

errors in Nationstar's reporting, and seeks damages and
injunctive relief under 11 U.S.C. § 105(a), which provides that
this court "may issue any order, process, or judgment that is
necessary or appropriate to carry out the provisions of this
title," and 12 U.S.C. § 2605(e)(3).  These claims do not pass
muster under Rule 12(b)(6).

In ¶ 91, the debtor "requests the correction of Plaintiff's
credit reporting to reflect an error due to Nationstar's lack of
standing and fraudulent activity to include removal of bankruptcy
filing and late payments."  For similar reasons to those set
forth in the court's discussion of Claim II, this obviously
conclusory allegation does not state facts establishing a claim
upon which relief can be granted.

In ¶ 97, the debtor alleges that "the late payments, [and]
refusal to allow Plaintiff to make payments even though the
ability to make payments presented itself was due to Nationstar's
own inaccurate accounting caused harm to the Plaintiff."  This
allegation is conclusory and does not state a claim upon which
relief can be granted.  For example, it alleges without any
concrete facts that Nationstar engaged in inaccurate accounting.

Finally, in ¶ 98, the debtor alleges that Nationstar
"reported to the three credit bureaus even though the
amounts and entries where [sic] being contested in violation
of [12 U.S.C. § 2605(e)(3)]."  However, § 2605(e)(3) is only

27

triggered for a 60-day period "beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments," and only bars providing information to a consumer reporting agency "regarding any overdue payment, owed by such borrower and relating to such period or qualified written request."  The debtor has not identified the date of Nationstar's receipt of any qualified written request; the date of any disclosure by Nationstar to any credit reporting agency; and the information that was disclosed (*i.e.*, whether the information related to any overdue payment relating to the 60-day period or the qualified written request).  She has thus failed to state a claim upon which relief can be granted.

Having failed to plead facts establishing a wrong in order to establish a claim upon which monetary damages relief can be granted, the Complaint similarly fails as to requested injunctive relief.  Crockett's prayer for relief indicates that she seeks:

> 10.  Count X: Injunctive Relief under Section 105(a) of the bankruptcy Code to preserve the administration of the estate and 12 U.S.C. § 2605(e) 3 protection of credit reporting; Injunctive Relief by Nationstar to provide a third - party accounting; . . . Injunctive relief for a temporary restraining order and preliminary injunction staying, restraining, and enjoining the Defendants from withholding and selling Plaintiffs' assets[.]

As in the case of her claim for monetary damages, Crockett has not alleged concrete facts establishing a wrongful act for which

28

injunctive relief might be sought.  She has also failed to plead the other elements for obtaining injunctive relief, including the lack of an adequate remedy at law.  As to harm, she only alleges in conclusory terms that:

- "the relief requested herein is necessary to protect Plaintiffs ability to efficiently and effectively administer and preserve the real property of its estate" (Compl. ¶ 93);

- "[i]n the absence of entry of the requested injunctive relief, Plaintiff and its estate will be imminently and irreparably harmed" (Compl. ¶ 94); and

- "the public interest will be served by promoting compliance with the purpose of the automatic stay and furthering the Plaintiffs' ability to administer and to preserve assets" (Compl. ¶ 96).

She has thus not stated a claim for an injunction upon which relief can be granted.  *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is therefore grounds for refusing to issue a preliminary injunction, even if the other three factors entering the calculus merit such relief.").  The claim for injunctive relief must be dismissed under Rule 12(b)(6).

In addition, as to the request for injunctive relief pursuant to § 2605(e)(3) of RESPA, RESPA does not provide an

injunctive remedy for private parties. *See Minter v. Wells Fargo Bank, N.A.*, 593 F. Supp. 2d 788, 796 (D. Md. 2009).

Furthermore, as to Crockett's request that the court prohibit "the Defendants from withholding and selling Plaintiffs' assets," such relief is unnecessary at this juncture: the automatic stay has not been lifted in her main bankruptcy case, and thus Nationstar is already prohibited from proceeding with any foreclosure sale.

Finally, Crockett's invocation of 11 U.S.C. § 105(a) does not entitle her to injunctive relief.  That provision "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity." *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir. 1986) (footnote omitted).  *See also Village of Rosemont v. Jaffe*, 482 F.3d 926, 935 (7th Cir. 2007) (in chapter 11 case, rejecting argument that "the bankruptcy court has the duty to step in and do whatever is needed to protect the estate for the creditors"); *In re Lehman Brothers Holdings Inc.*, 591 B.R. 153, 163 (Bankr. S.D.N.Y. 2018) ("Notwithstanding the Plan Administrator's laudable goal of increasing value, a general bankruptcy concept or objective is insufficient to provide a basis on which this Court can grant the Motion pursuant to section 105(a); rather, 'an exercise of section 105 power [must] be tied to another Bankruptcy Code

30

section.') (alteration in original) (quoting *New England Dairies,
Inc. v. Dairy Mart Convenience Stores, Inc. (In re Dairy Mart
Convenience Stores, Inc.)*, 351 F.3d 86, 92 (2d Cir. 2003)).
Crockett has not pointed to another provision of the Bankruptcy
Code for which an injunction is necessary or appropriate to carry
out such provision.

XI

PUNITIVE DAMAGES

In her Complaint (Claims I-VII and X), Crockett requests
punitive damages.  However, punitive damages may only be granted
when the commission of a wrong has been established.  Because the
debtor has failed to establish the commission of any wrong, her
claims for punitive damages must be dismissed.

XII

CONCLUSION

For the foregoing reasons, I will dismiss each of the claims
in the Complaint.  However, I will allow Crockett 21 days from
the date of the filing of this *Memorandum Decision and Order* to
file an amended complaint regarding the parts of Claims II and X
that allege injuries arising from Nationstar's failure to comply
with the requirements of RESPA and its regulations she has
identified (other than 12 C.F.R. § 1024.38 for which there is no
private right of action) and which I am dismissing primarily on
the basis of the insufficiency of the factual allegations.

However, the remaining claims should not be raised in an amended complaint.  Claims I, VI, VII, VIII, and IX fail as a matter of law or relate to issues that this court has already adjudicated and are thus barred.  Claims III, IV, and V must be dismissed because they pertain to issues that have been decided by the Superior Court.  Because this court is bound by the decisions of the Superior Court, it would not be appropriate at this time for Crockett to raise the claims asserted in Claims III, IV, and V in an amended complaint.  However, because Crockett could receive relief from the orders of the Superior Court (either Rule 60(b) relief from the Superior Court or a favorable ruling on appeal), the dismissal of these claims is without prejudice to seek (under Fed. R. Civ. P. 59 or 60, as the case may be) to set aside the dismissal of those claims if at some point Crockett receives a modification of the Superior Court orders.[7]

It is thus

ORDERED that Nationstar's motion to dismiss is granted as follows.  It is further

ORDERED that Claims II and X of the Complaint are dismissed with Crockett granted leave to file an amended complaint

---

[7]  Such relief in the Superior Court is unlikely at this time because the automatic stay in Crockett's bankruptcy case currently prevents such litigation from proceeding and, therefore, such relief from being granted.

regarding Crockett's claims under RESPA and its regulations
(other than her claim based on 12 C.F.R. § 1024.38) within 21
days of the entry of this *Memorandum Decision and Order*.  It is
further

　　　ORDERED that Claims I, III, IV, V, VI, VII, VIII, and IX of
the Complaint are DISMISSED without leave to amend the Complaint.

　　　　　　　　　　　　　　　　　　　　[Signed and dated above.]

Copies to: All counsel of record.